# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| TANGER FACTORY OUTLET CENTERS, INC.<br>3200 Northline Ave., Suite 360<br>Greensboro, North Carolina 27408<br><br>-and-<br><br>TANGER GRAND RAPIDS, LLC<br>3200 Northline Ave., Suite 360<br>Greensboro, North Carolina 27408<br><br>           Plaintiffs,<br><br>v.<br><br>CLARENCE H. FALSTAD<br>10225 Button Willow Drive<br>Las Vegas, Nevada 89134-7975<br><br>-and-<br><br>ACCESS TECHNOLOGIES SERVICES, INC.<br>10225 Button Willow Drive<br>Las Vegas, Nevada 89134-7975<br><br>           Defendants. | CASE NO.:<br><br>JUDGE:<br><br>**COMPLAINT**<br>**(Abuse of Process, Trespass on Land, Civil RICO)**<br><br>**Jury Demand Endorsed Hereon** |

Now come Plaintiffs, Tanger Factory Outlet Centers, Inc. and Tanger Grand Rapids, LLC (collectively, "Tanger") and for their Complaint against Defendants Clarence H. Falstad ("Falstad") and Access Technologies Services, Inc. ("Access"), state and allege the following:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Tanger Factory Outlet Centers, Inc. is a North Carolina corporation with its principal place of business at 3200 Northline Ave., Suite 360, Greensboro, North Carolina 27408.

2. Plaintiff Tanger Grand Rapids, LLC is a single-member North Carolina limited liability company with its principal place of business at 3200 Northline Ave., Suite 360, Greensboro, North Carolina 27408. The sole member of Tanger Grand Rapids, LLC is Tanger Properties Limited Partnership, which has its principal place of business at 3200 Northline Ave., Suite 360, Greensboro, North Carolina 27408.

3. Defendant Falstad is a natural person and citizen of the State of Nevada residing at 10225 Button Willow Drive, Las Vegas, Nevada 89134.

4. Defendant Access is a Nevada corporation with its principal place of business at 10225 Button Willow Drive, Las Vegas, Nevada 89134.

5. This Court has diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(a)(1) because this is a civil action between citizens of different states and no one plaintiff is a citizen of the same state as any one defendant, and the amount in controversy exceeds $75,000.00.

6. Additionally, this Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 because Plaintiffs civil RICO claims under 18 U.S.C. §§ 1961-1968 arise under the laws of the United States and Plaintiffs' state law claims form part of the same case or controversy.

7. This Court has specific personal jurisdiction over Defendants because the claims for relief asserted herein arise out of and relate to Defendants' contacts in Michigan and the consequences of Defendants' action occurred in Michigan. Specifically, and as alleged in greater detail below, Defendants purposefully availed themselves of acting in Michigan and Plaintiffs' causes of action against Defendants arise from Defendants' activities in Michigan. The acts engaged in by Defendants in Michigan and the consequences caused by Defendants' acts in

Michigan have a substantial enough connection with Michigan to make the exercise of personal jurisdiction over Defendants reasonable and consistent with constitutional due process.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## FACTS COMMON TO ALL CLAIMS

9. Falstad is an architect who describes himself as "the premier ADA registered architect in the country." Falstad serves as the president, secretary, treasurer, and director of Access. On its website (http://www.accessts.net/index.html), Access describes itself as "a leader in compliance litigation management as it relates to Federal Statutes," specifically the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA").

10. On information and belief, Access's business model is based on contacting individuals across the country and encouraging them to file lawsuits against entities that Access believes are in violation of the ADA and/or FHA. Access refers to these individuals as "advocates." Access then solicits attorneys to represent its "advocates," supplies the attorneys with a form complaint, requires the attorneys to use Falstad as their "expert witness," and actively manages the ensuring litigation.

11. Falstad is not an attorney and is not licensed to practice law in any state or federal jurisdiction in the United States.

12. Falstad has claimed that he and Access intend to initiate 100 ADA claims in 2018, 1,000 in 2019, and 3,000 in 2020.

13. While Access and Falstad do not charge individual clients for their "services," they insist on collecting "expert fees" from the defendants sued by Access-recruited plaintiffs. In some cases, Access insists on collecting these "fees" from defendants long before any judgment

is rendered in favor of an Access-recruited plaintiff. As an example, Falstad personally charges up to $15,000.00 (or more) from defendants as an advance "fee" to appear for and testify at deposition.

14. Access and Falstad routinely use the fee-shifting provisions of the ADA and FHA to intimidate defendants into settling ADA and FHA claims that have little or no merit. Falstad block bills his time in one-hour increments, and frequently demands six-figure fees from defendants as a precondition to any settlement. The invoices produced by Falstad to support his "fees" are often false, fraudulent, and/or inflated, containing time entries of up to eight (8) hours for simple tasks such as making a phone call to an Access-recruited plaintiff.

15. In or about March 2016, Falstad and Access contacted one William Frederick Saar ("Saar"), who resides at 95 Old Mill Drive, #17, Holland, Michigan 49423.

16. On information and belief, Falstad and Access contacted Saar because they had recently seen an online review that Saar had posted about the Tanger Outlets shopping mall located at 350 84th Street SW, Byron Center, Michigan (hereinafter, "Tanger Property"). During his initial phone call with Saar, Falstad encouraged him to file a lawsuit against Tanger for alleged violations of the ADA at the Tanger Property.

17. Falstad and Access subsequently contacted an attorney whom they recruited to represent Saar in his ADA lawsuit against Tanger. On information and belief, Falstad and Access provided the attorney with a form complaint that they had previously drafted and supplied to other attorneys involved in Access-initiated ADA litigation (hereinafter, "Complaint"). A true and accurate copy of the Complaint is attached hereto as **Exhibit A**.

18. The Complaint is replete with inaccuracies, often referring to Saar (an individual plaintiff) with the pronouns "they" and "themselves." *See, e.g.*, Complaint at ¶ 13. Aside from one paragraph which was apparently copied-and-pasted into the Complaint from a statement

4

previously made by Saar, *see* Complaint at ¶ 9, the entire pleading consists of boilerplate recitations of statutory law and generic descriptions of categorical ADA violations. On information and belief, these portions of the Complaint were drafted by Falstad and/or Access.

19. The Complaint was filed in the U.S. District Court for the Western District of Michigan on January 13, 2017, and was assigned the caption *Saar v. Tanger Factory Outlet Centers, Inc., et al.*, W.D. Mich. No. 1:17-cv-00041-JTN-ESC (hereinafter, "ADA Lawsuit").

20. On April 14, 2017, Saar filed an Amended Complaint to correctly identify Tanger Factory Outlet Centers, Inc. and Tanger Grand Rapids, LLC as the defendants in the ADA Lawsuit. A true and accurate copy of the Amended Complaint is attached hereto as **Exhibit B**.

21. After agreeing to waive service of the summons, Tanger attempted to mediate the ADA Lawsuit in good faith. Mediation was nonetheless unsuccessful, in large part because the Amended Complaint and the expert report prepared by Falstad failed to identify and describe any specific barriers to access at the Tanger Property.

22. Accordingly, and after Tanger and Saar participated in an initial mediation session on October 11, 2017, it was agreed that that any subsequent mediation could only proceed if Tanger were provided with specific facts and data showing the existence of barriers to accessibility. Counsel for Saar indicated that any such information would have to come from Falstad and Access, and agreed to do his best to obtain this information from Falstad and Access.

23. Once it became clear to Tanger that this supplemental information was not forthcoming, Tanger filed a motion for judgment on the pleadings seeking dismissal of Saar's Amended Complaint for want of Article III standing. This dispositive motion was not timely opposed by Saar.

24. On December 19, 2017, counsel for Tanger deposed Saar in Grand Rapids, Michigan. An extensive portion of Saar's deposition was dedicated to his interactions with

Falstad and Access. Saar was forthcoming and honest during his deposition, and described in detail how he was contacted by Falstad and how Falstad recruited him to initiate litigation against Tanger.

25.     During Saar's deposition, counsel for Tanger presented Saar with the invoices that Tanger had received for Falstad's expert "services" in October 2017 and December 2017 (hereinafter, "Access Invoices"). Previously, these Access Invoices had been presented to counsel for Tanger by email in support of Falstad's and Access's proposal to settle the ADA Lawsuit. A true and accurate copy of the Access Invoices is attached hereto as **Exhibit C**.

26.     Based on the time entries and expenses recorded in the Access Invoices, Falstad and Access demanded a total of $166,479.00 in "professional costs" as a precondition to any settlement between Tanger and Saar.

27.     During his deposition, Saar testified that many of the time entries recorded by Falstad and Access in the Access Invoices were false and/or significantly inflated. For example, between March 11 and March 17, 2016 Access billed approximately 25 hours for "Plaintiff Contact Preliminary" (abbreviated on the Access Invoices as "PCP"). These hours were billed by multiple timekeepers (whose initials are abbreviated in the Access Invoices as "HF," and "LS") in block entries of two, three, four, and eight hours. During his deposition, Saar testified that he did not speak with anyone at Access whose initials are "LS" and further testified that he did not speak with Falstad for two, three, four, or eight hours at a time.  In fact, Saar testified that he probably spoke with Falstad for about one hour – hardly the 25 hours billed by Falstad and Access for "preliminary contact" with Saar. True and accurate copies of the relevant pages of Saar's deposition reflecting this testimony are attached hereto as **Exhibit D**.

28.     On information and belief, many (if not a vast majority) of the time entries recorded in the Access Invoices were false, fraudulent, and/or grossly inflated.

6

29. On information and belief, Falstad and Access recorded false and/or inflated time charges to intimidate Tanger into paying Falstad and Access an exorbitant sum as a precondition to any settlement of the ADA Litigation, and to maximize their profit from the ADA Litigation.

30. Multiple sets of false and inflated Access Invoices were electronically transmitted by Falstad and Access to Tanger in October 2017 and December 2017.

31. Falstad's and Access's multiple, separate transmissions of fraudulent and false invoices by email in October and December 2017 for purposes of defrauding Tanger constitute at least two predicate acts in violation of 18 U.S.C. § 1343, which provides criminal penalties for anyone who, "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice."

32. Despite Falstad's and Access's unconscionable demands for payment and the pendency of Tanger's unopposed dispositive motion, Tanger agreed to participate in a second mediation session with Saar in Grand Rapids, Michigan on December 20, 2017. As a result of Falstad's and Access's ongoing failure to provide data and other information in support of the conclusory allegations and statements made in Saar's Amended Complaint, the December 20 mediation was short and unsuccessful. As memorialized in the Court-appointed mediator's December 20, 2017 status report to the Court's ADR Administrator, "[o]ngoing responsiveness issues by Plaintiff's expert [prevented] the Parties from identifying specific alleged ADA violations at Defendant's property." A true and accurate copy of the mediator's December 20, 2017 letter to this Court's ADR Administrator is attached hereto as **Exhibit E**.

33. Following the conclusion of the mediation, counsel for Tanger was informed (for the first time) that Falstad and Access had conducted an unauthorized "survey" of the Tanger Property on November 28, 2017 in an effort to obtain information in support of Saar's conclusory allegations. No Fed. R. Civ. P. 34 request to inspect Defendants' property was made (formally or informally) to counsel for Tanger prior to this unauthorized and undisclosed inspection. Moreover, the "results" of this inspection were not provided to counsel for Tanger prior to the December 20, 2017 mediation, rendering the mediation session entirely futile.

34. Falstad and Access never sought, and did not have, permission from Tanger or Tanger's counsel to enter Tanger's property for purposes of inspecting, collecting, and recording evidence for use in pending litigation.

35. On January 3, 2018, nearly one month *after* Saar's opposition to Tanger's Motion for Judgment on the Pleadings was due, Saar filed his improperly captioned "Answer of Plaintiff William Frederick Saar to Defendants' Motion for Judgment on the Pleadings."

36. Subsequently, and in order to comply with the discovery and expert report deadlines established by the court in the ADA Litigation, counsel for Tanger requested that Falstad avail himself for deposition as Saar's "expert witness." In response, Falstad demanded that Tanger pay him $15,000.00 *prior* to any such deposition. Falstad further demanded that Tanger reimburse him an additional $700/hour for any time spent during the deposition itself. Counsel for Tanger refused to reimburse Falstad in these amounts, offering instead to subpoena Falstad and to pay him the statutorily mandated $40 per day witness fee.

37. On January 12, 2018, Magistrate Judge Ellen S. Carmody granted Tanger's Motion for Judgment on the Pleadings and dismissed Saar's Amended Complaint for lack of Article III standing. A true and accurate copy of Magistrate Judge Carmody's January 12, 2018 Memorandum Order is attached hereto as **Exhibit F**.

38.     Saar did not file a timely appeal from Magistrate Judge Carmody's January 12, 2018 order and judgment.

## COUNT I: ABUSE OF PROCESS

39.     Tanger incorporates all preceding allegations as if full set forth herein.

40.     Using Saar as a proxy, Falstad and Access drafted the Complaint and initiated the ADA Litigation against Tanger for an ulterior purpose.

41.     Falstad and Access acted with the ulterior purpose of financially profiting from the ADA Litigation based on false pretenses.

42.     Apart from causing the ADA Lawsuit to be initiated, Falstad and Access abused the legal process by creating the false, fraudulent, and grossly exaggerated Access Invoices, which were presented to Tanger during the ADA Litigation in an effort to extort the payment of $166,479.00 from Tanger to Falstad and Access as a precondition to any settlement between Tanger and Saar.

43.     By presenting the false, fraudulent, and grossly exaggerated Access Invoices to Tanger, Falstad and Access abused the legal process to further their own corrupt business practices and profit from the ADA Litigation at Tanger's expense.

44.     As a direct and proximate result of Defendants' abuse of process, Tanger has been damaged in an amount in excess of $75,000 to be proven at trial.

## COUNT II: TRESPASS ON LAND

45.     Tanger incorporates all preceding allegations as if fully set forth herein.

46.     On or about November 24, 2017, Falstad and Access made an unauthorized intrusion onto the Tanger Property, Michigan for purposes of "testing" the property and collecting evidence in support of the pending ADA Litigation.

47. Falstad and Access did not seek or obtain the permission of Tanger or its counsel in the ADA Litigation to enter the Tanger Property for this purpose.

48. Tanger does not invite the public to its properties for purposes of "testing" the property and collecting evidence in support of threatened or pending litigation.

49. As a direct and proximate result of Defendants' unauthorized entry onto Tanger's real property, Tanger has been damaged in an amount to be determined at trial.

### COUNT III: CIVIL RICO
### (18 U.S.C. §§ 1961-1968)

50. Tanger incorporates all preceding allegations as if fully set forth herein.

51. Falstad and Access have engaged in a pattern of racketeering activity. This pattern is evidenced by at least two predicate acts of wire fraud, in violation of 18 U.S.C. § 1343. Specifically, in October 2017 and then in December 2017, Falstad and Access caused false and fraudulent invoices to be transmitted to Tanger by wire for purposes of defrauding Tanger into setting the ADA Litigation based on dramatically inflated and false expert witness fees purportedly incurred by the plaintiff, Mr. Saar. Mr. Saar later confirmed during his December 2017 deposition that the charges contained on the Access Invoices were, in many cases, grossly inflated and false.

52. Falstad and Access are culpable persons who actually violated and/or conspired to violate the RICO statute, 18 U.S.C. §§ 1961-1968.

53. Access constitutes an "enterprise," as defined by 18 U.S.C. § 1961(4). Falstad and Access conducted the affairs of Access through a pattern of racketeering activity.

54. Falstad and Access intended to engage in the alleged predicate acts, knowing that said predicate acts are illegal.

55. Falstad's and Access's actions in violation of 18 U.S.C. §§ 1961-1968 have a nexus with interstate commerce. Falstad and Access created the false and fraudulent Access Invoices in Nevada, and transmitted them by wire to Michigan, where they were used to defraud Tanger during the course of the ADA Litigation.

56. As a direct and proximate result of Defendants' violation of 18 U.S.C. §§ 1961-1968, Tanger has been damaged in an amount to be determined at trial.

**WHEREFORE**, Plaintiffs Tanger Factory Outlet Centers, Inc. and Tanger Grand Rapids, LLC respectfully demand entry of judgment against Defendants Clarence H. Falstad and Access Technologies Services, Inc. and further demand an award of compensatory damages, punitive damages, the costs of this action and attorneys' fees, and any further relief that this Court believes just and equitable.

Dated: February 26, 2018                Respectfully submitted,

s/ *Christopher B. Congeni*
Christopher B. Congeni (0078160)
Daniel J. Rudary (0090482)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH  44308
Phone:      (330) 253-5060
Fax:         (330) 253-1977
E-mail:     cbcongeni@bmdllc.com
              djrudary@bmdllc.com

*Counsel for Plaintiffs Tanger Factory Outlet Centers, Inc. and Tanger Grand Rapids, LLC*

## **JURY DEMAND**

Plaintiffs hereby demand trial by jury on all claims stated herein so triable.

s/ *Christopher B. Congeni*
*Counsel for Plaintiffs*

4818-0278-0506, v. 1